UNITED STATES *v.* OSBORN.

*(Circuit Court, D. Washington, S. D.* November 11, 1890.)

PUBLIC LANDS—UNLAWFUL OCCUPANCY—GRANT TO RAILROAD.

The inclosure and occupancy of lands in an odd-numbered section, and within the limits of a grant to a railroad company, where the entry was made after the same had been withdrawn from sale or entry, and before completion of the railroad, or any declaration of forfeiture of the grant, by a person who, in good faith, intended to acquire title to it by purchase from the railroad company, is not made unlawful by the act of congress entitled "An act to prevent unlawful occupancy of the public lands," approved February 25, 1885, (23 U. S. St. 321.)

*(Syllabus by the Court.)*

In Equity.

*P. H. Winston*, U. S. Atty.

*D. J. Crowley*, for defendant.

HANFORD, J. This suit is founded upon the act of congress entitled "An act to prevent unlawful occupancy of the public lands," approved February 25, 1885, (23 U. S. St. 321,) the first section of which defines unlawful occupancy as follows:

"All inclosures of any public lands in any state or territory of the United States heretofore or to be hereafter made, erected, or constructed by any person, party, association, or corporation, to any of which land included within the inclosure the person, party, association, or corporation making or controlling

the inclosure had no claim or color of title, made or acquired in good faith, or an asserted right thereto by or under claim, made in good faith with a view to entry thereof at the proper land-office under the general laws of the United States at the time any such inclosure was or shall be made, are hereby declared to be unlawful."

The land which is the subject of controversy in the case is situated in sections 20 and 21, township 7, range 35, in Walla Walla county, and within the limits of the withdrawal made August 13, 1870, of lands claimed by the Northern Pacific Railroad Company, under its grant for the projected railroad to Portland. The defendant denies in his answer that he has inclosed or occupied any part of section 20, and there is no proof that he has done so. As to the lands in section 21, I find, from the evidence, that the defendant inclosed the tract described in the bill in the year 1882, and has ever since occupied and cultivated the same. That in so taking possession of and improving said land he relied upon a promise of said company that it would, after perfecting its title, sell the land to him at its appraised value, exclusive of the improvements thereon which he should make, and expected to so acquire title to it from said company. Said company's purpose to build the projected railroad down the Columbia river, to Portland, had not been abandoned in 1882, and the defendant had an actual claim to the land, made in good faith on his part, at the time of his entry thereon. The mere statement of the facts in the case, as above, ends it, for by no possible construction of its terms can the act referred to be made applicable, and I am unable to understand why the late United States attorney for the territory of Washington instituted this suit, unless it was for the purpose of obtaining a decision upon the question as to the true southern limit of the railroad lands earned by the partial completion of the road, this land being north of a line designated as the southern limit in an order made by the acting commissioner of the general land-office March 20, 1885, known as the "Harrison Line," and is part of the land granted by the United States and earned by the company, if said line correctly fixes the extent of the grant. Said order was revoked within a month after it was made, and there has been contention and uncertainty ever since, as to the titles to all the lands north of said line and up to another line known as the "McFarland Line." The question, however, does not arise in the case. It can be decided either way, and the result of this case will be the same; for by the plain language of the act which I have quoted, one of the essentials of an unlawful occupancy is that at the time of its inception there should have been no claim to the land made in good faith, and no color of title acquired in good faith, and it is clearly established and conceded that the defendant entered under both a claim and color of title made and acquired in good faith. Let a decree be entered dismissing the bill.